## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

THE BANK OF NEW YORK MELLON, )
as trustee, )
                                     )
      Appellant, )
                                     )
   vs. )     No. 12 C 7470
                                     )
BUILDERS FINANCIAL CORPORATION, )
                                     )
      Appellee. )

## **MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

      The Bank of New York Mellon, as Indenture Trustee, Institutional Trustee, and Guarantee Trustee, has appealed from a bankruptcy judge's July 25, 2012 order granting summary judgment in favor of Chapter 11 debtor Builders Financial Corporation. The bankruptcy court's order concluded that Bank of New York Mellon, as trustee for the owner of certain debentures, was the proper party to vote on the Debtor's plan for reorganization.[1] The order invalidated the vote that Bank of New York Mellon Trust Company N.A., apparently a different though related entity, cast in a different capacity, namely as trustee for the beneficial owner of certain securities that the owner of the debentures had issued. For the reasons set forth below, the Court affirms the bankruptcy court's order.

---

[1] The bankruptcy court's order says that Bank of New York Mellon as "institutional trustee" was the party entitled to vote. The claim against the estate that gave rise to the right to vote, however, was made by Bank of New York Mellon as "indenture trustee." This particular discrepancy may be a scrivener's error in the bankruptcy court's order, but one way or another it does not affect the merits.

**Background**

The facts in this case are essentially undisputed. Builders Financial is a bank holding company and parent of Builders Bank, an Illinois chartered commercial bank. In 2001, to raise additional capital, Builders Financial entered into a series of financial transactions in which it issued subordinated debentures to statutory trusts that it created as subsidiaries of Builders Financial. In turn, the statutory trusts issued "trust originated preferred securities," referred to as TOPrS. Builders Financial structured the transaction this way – rather than issuing debt or stock directly to the holders of the trust preferred securities – in order to take advantage of beneficial tax and capital treatment it would receive under the applicable regulations promulgated by the Federal Reserve.

As part of this transaction, Builders Financial created three Delaware statutory trusts to acquire the subordinated debentures and to issue the securities: Builders Capital Trust I (Trust I), Builders Capital Trust II (Trust II), and Builders Capital Trust III (Trust III). Trust I, the only trust relevant to this appeal, issued 15,000 capital securities valued at $15,000 to Chase Manhattan Bank, trustee for MM Community Funding, Ltd. MM Community Funding aggregated the securities and other similar instruments into a structured investment vehicle known as a collateralized debt obligation (CDO). This was accomplished by placing all of the purchased securities in a pooled trust and issuing notes collateralized by the pooled securities. These notes were then purchased by institutional and individual high net worth investors. The Bank of New York Mellon Trust Company, N.A., as successor trustee to original trustee Chase Manhattan Bank, now serves as securitization trustee for MM Community Funding (CDO Trustee) and holds legal title to the securities sold to MM Community Funding.

The transactions between Builders Financial, Trust I, MM Community Funding, and the CDO investors were entered into pursuant to various agreements governing the initial transaction and the parties' relationships. The debentures were issued by Builders Financial pursuant to an indenture agreement with Bank of New York Mellon as Indenture Trustee. Builders Financial and Bank of New York Mellon also entered into a declaration of trust, which governed the issuance of securities by Trust I and gave legal title of the debentures to Bank of New York Mellon as Institutional Trustee. Thus Bank of New York Mellon, through its employee Robert Major, an attorney, served as both the Indenture Trustee and Institutional Trustee.

On July 13, 2010, Builders Financial filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On November 1, 2010, Bank of New York Mellon, in its capacity as Indenture Trustee for Trust I, filed a proof of claim in the bankruptcy case in the amount of $19,195,856.92, representing pre-petition principal and interest due, plus additional amounts for fees and expenses. The trustees for Trust II and Trust III also filed proofs of claim for $9,249,651.08 and $11,387,121.45, respectively. Neither MM Community Funding nor Bank of New York Mellon Trust Co., the CDO Trustee, filed a proof of claim.

On December 22, 2010, the Bankruptcy Court entered an order approving Builders Financial's disclosure statement regarding its proposed plan for reorganization. The disclosure statement provides that the "holders of the Junior Subordinated Debt Securities Claims are entitled to vote on the Plan and their votes will be counted." *In re Builders Fin. Corp.*, No. 10-31180, docket entry 56 at 7 (Bankr. N.D. Ill.). The disclosure statement also states that the holders of such claims are Trust I, Trust II, and Trust III.

The plan named only one class of seven creditors that were entitled to vote: Stuart Timoner, Armand Lasky, Yaron Hassid, Trust I, Trust II, Trust III, and Builders Bank. The bankruptcy court's order approving the disclosure statement set February 4, 2011 as the last day to submit ballots for or against the proposed plan.

In January 2011, Stuart Timoner, Armand Lasky, and Yaron Hassid, whose claims totaled about $40,000, submitted ballots accepting the plan. Builders Bank, whose claim totaled $5,217,500, also filed a ballot on February 1, 2011 accepting the plan. Trust I, Trust II, and Trust III did not cast votes.

On February 4, 2011, Bank of New York Mellon Trust Co., in its capacity as CDO Trustee, filed the only ballot rejecting the proposed plan. The ballot stated that it was submitted by "The Bank of New York Mellon Trust Company, N.A. as trustee for MM Community Funding Ltd." The ballot (actually an amended ballot) referenced a claim for $19,185,532, which although the figures are not exactly the same appears to refer to BCT I's claim. Five days later, on February 9, 2011, Builders Financial filed its ballot report, noting in a footnote that this ballot was not counted because "MMCF is not a creditor of the Debtor." *Id.*, docket entry 68 at 1.

Builders Financial then moved to disqualify the CDO Trustee's ballot. Bank of New York Mellon filed an objection in its capacity as Indenture Trustee and Guarantee Trustee. The parties then filed cross-motions for summary judgment. On July 25, 2012, the bankruptcy court entered an order granting the Debtor's summary judgment motion disqualifying the CDO Trustee's ballot. This appeal followed.

4

**Discussion**

Pursuant to 28 U.S.C. § 158(a), a federal district court has jurisdiction to hear an appeal from a final order by a bankruptcy court. It is undisputed that the order in question was a final order.

On appeal, a bankruptcy court's grant of summary judgment is reviewed *de novo*. *In re AR Accessories Grp., Inc.*, 345 F.3d 454, 457 (7th Cir. 2003). A district court will affirm a bankruptcy court's grant of summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Monarch Air Serv., Inc. v. Solow*, 383 F.3d 663, 668 (7th Cir. 2004).

Bank of New York Mellon[2] contends that the bankruptcy court erred in granting summary judgment in favor of Builders Financial and disqualifying the CDO Trustee's ballot, for two reasons. First, Bank of New York Mellon argues that the CDO Trustee was the "real party in interest" with respect to the claim against the bankruptcy estate, not Trust I, and thus was the proper party to cast the ballot. Second, Bank of New York Mellon argues that even if the ballot was cast improperly, the bankruptcy court should not have invalidated the ballot but instead should have ordered a re-solicitation of the ballots along with instructions as to exactly which parties may cast a vote.

The Bankruptcy Code provides that "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a). A claim is defined simply as a "right to payment," which the Supreme Court has explained "is nothing more nor less than an enforceable obligation." *Cohen v. De La Cruz*, 523

---

[2] The appellant in this case is Bank of New York Mellon, the entity that is the indenture trustee, institutional trustee, and guarantee trustee of Trusts I, not Bank of New York Mellon Trust Co., N.A., the CDO trustee and the entity that cast the disputed ballot. The bankruptcy trustee (the appellee in this case) has not argued that Bank of New York Mellon is an improper appellant.

5

U.S. 213, 218 (1998) (internal quotation marks omitted). Thus a party holds a claim against a bankruptcy estate – and hence the right to vote on a proposed plan of reorganization – if it holds an enforceable obligation against the debtor.

In this case, it was Bank of New York Mellon as Indenture Trustee, not Bank of New York Mellon Trust Co. as CDO Trustee for MM Community Funding, that holds the claim against Builders Financial. There is no serious dispute about this. The claim against the debtor that gave rise to the right to vote on the proposed plan was filed by Bank of New York Mellon as Indenture Trustee, not by Bank of New York Mellon Trust Company as CDO Trustee. Under the financing structure utilized by Builders Financial, the CDO Trustee for MM Community Funding (originally Chase Manhattan Bank, and now Bank of New York Mellon Trust Co.) purchased the capital securities issued by Trust I. Trust I then used the proceeds from the sale of the capital securities to purchase the subordinated debt issued by Builders Financial. As such, though the CDO Trustee holds title to the capital securities issued by Trust I, the trustee for Trust I is the entity that holds the enforceable obligation against Builders Financial for the principal and interest under the debentures.

The fact that the trustee for Trust I holds the claim against the estate is confirmed by examining the operative documents governing the relationship between Builders Financial, Trust I, and MM Community Funding. Section 7.03 of the indenture agreement provides that the registered owner of the debenture is the "absolute owner . . . for purpose[s] of receiving payment . . . and for all other purposes." *In re Builders Fin. Corp.*, No. 10-31180, docket entry 145-23 at 13. The cross receipt jointly issued by Builders Financial and Trust I at the time the debentures were sold provides, in turn,

that the debentures are registered to Bank of New York Mellon as Institutional Trustee. In addition, section 6.7(a) of the declaration of trust states that "legal title to the Trust Property is vested exclusively in the Institutional Trustee" and that "the Holders shall not have any right or title therein other than the undivided beneficial interest in the assets of the Trust conferred by their Securities . . ." *Id.*, docket entry 151-19 at 6. The definitions in the declaration of trust make clear that the term "Holders" refers to the CDO Trustee, the registered owner of the securities issued by Trust 1, and that the "undivided beneficial interest in the assets of the Trust" is a reference to those securities. The operative documents therefore show that although the CDO Trustee is entitled to a proportionate share of the proceeds earned by Trust I, it does not have a right to the individual assets owned by Trust I.

Despite the clear language in the operative documents, however, Bank of New York Mellon argues that the Court should make an exception in this case because "the more important inquiry for the purposes of plan voting is who has an economic interest in the debtor." Appellant's Br. at 6. Bank of New York Mellon contends that because the principal and interest paid by Builders Financial flow to MM Community Funding in the form of dividends, Trust 1 "is nothing more than a pass-through for the holders of the [c]apital [s]ecurities who hold the beneficial and *de facto* ownership interest in the [d]ebentures." *Id.* at 11.

The Court disagrees. As in this case, the bankruptcy court in *In re Shilo Inn, Diamond Bar, LLC*, 285 B.R. 726 (Bankr. D. Or. 2002), addressed which party had the right to vote in a case involving a financing arrangement structured in a way similar the one in this case. In *Shilo Inn*, a trust like Trust I purchased the debt of a corporate entity

7

that later filed for bankruptcy under Chapter 11. The trust financed the debt purchase by issuing stock and selling it to investors, just as Trust I did here, by purchasing the debentures with the proceeds of the sale of the capital securities that it issued. The trust in *Shilo Inn* therefore functioned as a "pass-through," just as Bank of New York Mellon contends Trust I functions in the present case. Nevertheless, the court in *Shilo Inn* held that the claims belonged to the trust, not to the certificate holders, and that the trust's agent therefore had the right to vote the trusts' claims. *Id.* at 729. In doing so, the court reasoned that the certificate holders did not have any direct interest in the obligations of the *debtors*, only certificates evidencing a beneficial interest in the funds of the *trust*. *Id*. The Court agrees with analysis by the bankruptcy judge in *Shilo Inn*. MM Community Funding, an investor in a creditor of the debtor, is not the holder of the creditor's claim against the estate and thus lacks the right to vote under the applicable provision of the Bankruptcy Code.

Bank of New York Mellon's alternative argument on appeal is that the bankruptcy court should not have invalidated the CDO Trustee's ballot but instead should have ordered a re-solicitation of the ballots on the proposed plan, with clearer instructions as to which party may cast a vote. In support of this proposition, Bank of New York Mellon cites *In re Southland Corp.*, 124 B.R. 211 (Bankr. N.D. Tex. 1991). *Southland*, however, does not warrant a re-vote in this case. Rather, *Southland* addressed the sufficiency of the debtor's pre-petition solicitation pursuant to section 1126(b) of the Bankruptcy Code. *Id.* at 223-26. The court concluded that the debtor's pre-petition solicitation did not conform to the requirements of section 1126(b), thus leaving the debtor with the option to proceed with its plan of reorganization using the post-petition

solicitation procedure under sections 1125, 1126(a), and associated law. *Id.* at 226-27.

That aside, the applicable rule, section 1126(a) of the Bankruptcy Code, is quite clear in identifying who is entitled to vote on a proposed plan of reorganization: it is "the holder of a claim." Bank of New York Mellon, as the Indenture Trustee and the party that filed the claim against the estate, presumably knew full well that as the holder of the claim, it was entitled to vote on the proposed plan on behalf of Trust I. From what the Court can determine, it would have been relatively easy for Bank of New York Mellon to get the necessary instructions from MM Community Funding or the CDO trustee (Bank of New York Mellon Trust Company) if that was the entity believed to have the real interest at stake. Given the plain language of the statute, the relevant entities ought to have worked this out in advance and taken a belt-and-suspenders approach rather than winging it and then expecting the bankruptcy court to clean up their errors after the fact. The bankruptcy court did not err in declining to order a do-over of the balloting.

**Conclusion**

For the foregoing reasons, the Court directs the Clerk to enter judgment affirming the decision of the bankruptcy court.

 MATTHEW F. KENNELLY
 United States District Judge

Date: April 9, 2013